United States District Court
Middle District of Florida
Jacksonville Division

**JACK OWENS AND KATHY OWENS,**

 *Plaintiffs,*

v.                 No. 3:20-cv-1085-J-34PDB

**EASY STORE-IT, INC., ETC.,**

 *Defendants.*

## Report and Recommendation

In this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and Florida law, the parties move under *Lynn's Food Stores, Inc. v. U.S. by & through U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982), for approval of a settlement and dismissal of the action with prejudice. Doc. 8.

## Background

Jack and Kathy Owens filed this action in September 2020. Doc. 1. In the complaint, they allege these facts.

The defendants—Easy Store-It, Inc., The Benson Living Trust, and Linda Rae Benson—operate a self-storage and office-rental facility. Doc. 1 ¶ 3. Benson is a supervisor, manager, and owner involved in daily operations. Doc. 1 ¶ 32. She directly supervised the Owenses and decided compensation and work hours. Doc. 1 ¶¶ 32, 33.

The Owenses started working for Easy Store-It and the trust in September 2011, performing "a variety of services related to the operation of a self-storage business." Doc. 1 ¶¶ 23–26. Easy Store-It and the trust maintained no records of daily or weekly hours worked. Doc. 1 ¶¶ 27–30. Jack Owens "was not paid wages, cash-in-hand, by the [d]efendants." Doc. 1 ¶ 31.

The Owenses bring three claims against all defendants: one FLSA claim by Jack Owens for unpaid minimum wages (count I); one Florida-law claim by Jack Owens for unpaid minimum wages (count II); and one FLSA claim by Kathy Owens for unpaid minimum wages (count III). Doc. 1 ¶¶ 35–56. They seek unpaid wages, liquidated damages, attorney's fees, costs, and post-judgment interest. Doc. 1 ¶¶ 41, 56. For the Florida-law claim, Jack Owens also seeks a declaration that the defendants violated Florida law and prejudgment interest. Doc. 1 ¶ 48.

The complaint includes these statements: "[T]he defendants regularly owned and operated a business enterprise, respectively, engaged in commerce or in the production of goods for commerce as defined in §3(r) and 3(s) of the FLSA, 29 U.S.C. §203(r) and 203(s)," Doc. 1 ¶ 4; Easy Store-It and the trust were covered enterprises under the FLSA, Doc. 1 ¶¶ 5, 6; the Owenses regularly handled goods or materials moved in interstate commerce and manufactured outside of Florida, including office supplies, telephones, and "other materials necessary for the operation/cleaning of self-storage units," Doc. 1 ¶ 7; the Owenses are individually covered under the FLSA because they regularly used instrumentalities of interstate commerce, "particularly as to persons outside the State of Florida," Doc. 1 ¶¶ 9, 10; Easy Store-It and the trust operate "as a single, unified enterprise," Doc. 1 ¶ 15; Easy Store-It and the trust were employers, Doc. 1 ¶¶ 17, 18; and Benson "is personally liable for" wage violations, Doc. 1 ¶ 32.

In October 2020, the defendants moved to dismiss the complaint. Doc. 7. Relying on an affidavit from Benson and other evidence, they contend that the FLSA does not apply because there is no enterprise coverage (no annual gross sales of at least $500,000) and no individual coverage (the Owenses engaged in no interstate commerce). Doc. 7. They further contend that without the FLSA claims, there is no supplemental jurisdiction for the Florida-law claim.[1] Doc. 7 at 2.

---

[1] Under the FLSA, "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is

The defendants explain Benson became the sole owner of Easy Store-It after her husband died in July 2019. Doc. 7 at 3. Benson and the trust own the property on which the headquarters for Easy Store-It sits. Doc. 7 at 3. Benson is the sole trustee and beneficiary of the trust. Doc. 7 at 3. The trust has no business operations or employees. Doc. 7 at 3. The Owenses do not allege Easy Store-It had annual gross sales of more than $500,000, and between 2015 and 2019, annual gross sales never exceeded $201,693. Doc. 7 at 4–5. Jack Owens contracted to provide general building and ground maintenance services that involved no regular use of telephone, mail, or travel outside Florida. Doc. 7 at 5. Kathy Owens contracted to serve as an office manager and her duties—greeting customers, recording payments, answering the telephone, taking inventory—involved no travel outside Florida or the regular use of telephone or mail for communication with others outside Florida. Doc. 7 at 5.

---

employed in an enterprise engaged in commerce or in the production of goods for commerce" certain minimum wages. 29 U.S.C. § 206(a). An "[e]nterprise engaged in commerce or the production of goods for commerce" must, among other requirements, have an annual gross volume of sales of at least $500,000. 29 U.S.C. § 203(s)(1)(A). "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

In the motion to dismiss, the defendants contend the Court can consider matters outside the pleading because failure to meet the FLSA requirements implicates subject-matter jurisdiction. Doc. 7 at 7. In the current motion, the parties state that subject-matter jurisdiction is an issue. Doc. 8 at 4. They are incorrect. Individual or enterprise coverage under the FLSA is an element of a plaintiff's claim for relief, not a jurisdictional threshold. *Biziko v. Horne*, No. 20-10033, 2020 WL 7022384, at *3 (5th Cir. Nov. 30, 2020) (to be published); *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 33 (1st Cir. 2007); *Rodriguez v. Diego's Rest., Inc.*, 619 F. Supp. 2d 1345, 1350 (S.D. Fla. 2009). Although the Eleventh Circuit has not expressly held individual or enterprise coverage under the FLSA is an element of the plaintiff's claim for relief, not a jurisdictional threshold, the Supreme Court's opinion in *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006), which held a similar requirement under Title VII is not jurisdictional, compels that holding. *See generally Definitive Marine Surveys Inc. v. Tran*, 339 F. Supp. 3d 1292, 1298–1301 (M.D. Fla. 2018) (surveying Supreme Court precedent on distinction between jurisdictional limitations and claims-processing rules).

The same month, before a response to, and a ruling on, the motion to dismiss, the parties filed the current motion for approval of a settlement. Doc. 8.

**Motion**

The parties explain the Owenses worked as "on-site, live-in, property managers for the [d]efendants' self-storage warehouse business." Doc. 8 at 1. The Owenses contend they were not paid minimum wage based on the hours worked and the fact they had to pay to live in an apartment on the defendants' property. Doc. 8 at 1–2. The defendants "vehemently" dispute any wage violation. Doc. 8 at 2.

The parties explain that they have agreed to resolve the dispute because of many factual disputes, including: whether the defendants are a covered enterprise under the FLSA considering their annual gross sales; whether the Owenses are individually covered under the FLSA by engaging in interstate commerce; whether Benson is individually liable as an employer; whether the Owenses are entitled to liquidated damages; whether the trust is an employer; whether Easy Store-It and the trust operate as a unified enterprise; whether the defendants kept appropriate records; whether any FLSA violation was willful; the number of hours the Owenses worked; whether the defendants' recordkeeping complies with the FLSA; and whether the defendants retaliated against the Owenses. Doc. 8 at 2–3. Regarding retaliation, the parties explain that the settlement includes resolution of a contemplated amendment to the complaint to add retaliation claims under the FLSA and Florida law. Doc. 8 at 3. (The basis for the claims is not stated, but the parties explain the Owenses still worked for the defendants when counsel sent pre-suit demand letters. Doc. 8 at 3.) The parties add that settlement is appropriate given the risks of continued litigation during a pandemic. Doc. 8 at 3.

The parties explain that the defendants agree to pay $34,155: $7300 in attorney's fees and costs, separately negotiated from the amounts to the Owenses and considering "extensive pre-suit negotiations"; $4500 to Jack Owens in wages plus an

4

equal amount in liquidated damages; $2655 to Jack Owens in exchange for a release from any retaliation claim under the FLSA or Florida law; $4500 to Kathy Owens in wages plus an equal amount in liquidated damages; and $6200 to Kathy Owens in exchange for a release from any retaliation claim under the FLSA or Florida law. Doc. 8 at 3–4.

The parties contend that settlement is appropriate because of the factual issues and the defendants' financial resources. Doc. 8 at 4. The parties observe that if the Court grants the defendants' motion to dismiss, the Owenses would be entitled to nothing. Doc. 8 at 4. The parties assert that they have made good-faith arguments and have reached a fair and reasonable resolution of bona fide disputes. Doc. 8 at 4. The parties state that the settlement accounts for the uncertainty of trial and other factors, including the probability of success, the range of recovery, and the attorneys' opinions. Doc. 8 at 4. The parties ask the Court to approve the settlement and dismiss the action with prejudice. Doc. 8 at 4.

**Agreement**

The agreement includes introductory recitals, including that the Owenses believe the defendants retaliated against them after the filing of this action; that the defendants deny any wrongdoing and agree to the settlement because of the expense of litigation, length of time to resolve the action, inconvenience, and disruption to business operations; that the Owenses are competent to enter into the agreement, have had a reasonable amount of time to consider it, and enter into the agreement knowingly and voluntarily; and that the parties agree the settlement is fair and in the best interest of all parties. Doc. 8-1 at 1.

The agreement, Doc. 8-1, includes: a provision stating that the defendants will pay $34,155 (as described above) at certain times and the parties separately negotiated the attorney's fees, ¶ 2; a provision that the Owenses agree to release the defendants from FLSA and other claims regarding the payment of wages or

5

retaliation, ¶ 3; a provision about the timing and content of a joint motion to dismiss this action, ¶ 4; provisions about the entirety of the agreement, severability, and modification, ¶¶ 5–7; a provision about attorney's fees in an action to enforce the agreement, ¶ 8; a provision that the Owenses enter into the agreement knowingly and voluntarily, ¶ 9; provisions about a binding agreement and construction, ¶¶ 10–11; a provision that Florida law should govern the agreement, ¶ 12;[2] and provisions about caption constructions and counterpart originals, ¶¶ 13–14.

## Authority

Passed in 1938, the FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[ ] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).

If an employee proves his employer violated the FLSA, the employer must pay him unpaid wages (for up to two years or three if the employer intentionally violated the law, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988)), an equal amount as liquidated damages (absent the employer's proof of good faith and reasonable grounds for believing it was not violating the FLSA, 29 U.S.C. § 260), and attorney's fees and costs. 29 U.S.C. § 216(b).

To foster the FLSA's purpose and to prevent an employer from using its superior bargaining position to take advantage of an employee, the Eleventh Circuit, in *Lynn's Food Stores, Inc. v. U.S. by & through U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982), placed limits on the ability of private parties to settle a FLSA case. *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013). To do so, they must present their agreement to the court, and the court must scrutinize it for fairness. *Id.* at 1306–07. If the agreement reflects a fair and reasonable compromise

---

[2]This report and recommendation does not address whether federal or Florida law would govern an action seeking enforcement of the agreement.

over a disputed issue, the court may approve it to promote the policy of encouraging settlement. *Lynn's*, 679 F.2d at 1354.

A court should presume a settlement is fair and reasonable. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Factors pertinent to fairness and reasonableness may include the existence of collusion behind the settlement; the complexity, expense, and likely duration of the case; the stage of the proceedings and the discovery completed; the probability of the plaintiff's success on the merits; the range of possible recovery; and the opinions of counsel. *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994).

The "FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). Besides reviewing a compromise of a FLSA claim, a court must "award a reasonable attorney's fee to [the plaintiff's] counsel," *id.* at 352, and must "[e]nsure that no conflict has tainted the settlement," *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). If the parties negotiated attorney's fees separately from the amount to the plaintiff, the court need not undertake a lodestar review of the attorney's fees for reasonableness. *Bonetti*, 715 F. Supp. 2d at 1228.

## Analysis

Based on the parties' representations and a review of the complaint, the motion to dismiss, the motion to approve the settlement agreement, and the agreement, the agreement is a fair and reasonable compromise of disputed issues.

The parties are represented by counsel. There is no stated or apparent collusion behind the settlement. There are many disputed issues, including whether the FLSA even applies here. If the Court denied the motion to dismiss, resolving the disputes without settlement would require costly discovery and continued litigation that would overwhelm the actual damages and strained resources during a pandemic.

If the Court granted the motion to dismiss, the Owenses would receive nothing. The parties believe that the settlement is reasonable.

The agreement contains nothing commonly found objectionable.[3] The motion does not ask the Court to retain jurisdiction to enforce the agreement. Approval is warranted.

On attorney's fees and costs, given the parties' representation they agreed on the attorney's fees separately from the amounts to the Owenses, the Court need not undertake a lodestar review. *See Bonetti*, 715 F. Supp. 2d at 1228. Moreover, the fees appear reasonable. Although $7300 normally would seem high for the work reflected on the docket (filing a standard complaint and preparing the settlement agreement and the motion), the undersigned accepts the representation that there were "extensive pre-suit negotiations" for two plaintiffs, Doc. 8 at 3, and discussions about a proposed amendment to the complaint to add retaliation claims based on more recent activity.

---

[3]For example, some judges will strike a non-disparagement provision because its placement of a prior restraint on one's ability to speak freely about the case contravenes public policy and the First Amendment. *See, e.g., Loven v. Occoquan Grp. Baldwin Park Corp.*, No. 6:14-cv-328-Orl-41TBS, 2014 WL 4639448, at *3 (M.D. Fla. Sept. 16, 2014) (unpublished).

Some judges will strike a no-reemployment provision because its impact could be substantial and result in an unconscionable punishment for asserting FLSA rights. *See, e.g., Nichols v. Dollar Tree Stores, Inc.*, No. 1:13-cv-88(WLS), 2013 WL 5933991, at *5–6 (M.D. Ga. Nov. 1, 2013) (unpublished).

Some judges will not approve an agreement to settle a FLSA claim that includes a general release because, without an indication of the value of the released claims, the fairness and reasonableness of the compromise cannot be determined. *See, e.g., Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351−52 (M.D. Fla. 2010).

## Recommendation

I recommend:

1. **granting** the parties' motion for approval of the settlement, Doc. 8, and approving the settlement, Doc. 8-1, as a fair and reasonable resolution of disputed issues;

2. **dismissing** the case with prejudice; and

3. **directing** the Clerk of Court to close the file.[4]

## Consent

To expedite the resolution of the current motion, the parties still have an opportunity to consent to the undersigned conducting the remaining proceedings in this action, including entry of judgment and any post-judgment matters. To do so, they must jointly execute and file the consent form attached to this report and recommendation (using a single form rather than separate forms). Of course, the parties remain free to withhold consent without adverse substantive consequences. *See* Fed. R. Civ. P. 73(a)(2).

**Entered** in Jacksonville, Florida, on December 9, 2020.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

---

[4] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

Attachment: Form AO 85